## WILLIAMS vs. PALMER.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

A letter in terms equivalent to a demand, addressed by the agent of the plaintiff, to that of the defendant, but intended for, and subsequently communicated to the defendant, puts him *in morâ.*

The letters of one broker to another, through whom the parties entered into a contract, are admissible in evidence to explain the conduct of his employer.

The plaintiff averred he had sold the defendant one hundred and seventy-eight shares of the stock of the City Bank of New-Orleans, on each share of which had been paid twenty-five dollars, at four dollars and fifty cents advance, on the amount of each share paid, making in the whole, the sum of five thousand two hundred and fifty-one dollars. A conveyance of the stock was tendered to the defendant, who neglected to pay in the manner agreed, and after notice to the defendant, it was subsequently resold by plaintiff, at a rate less than that stipulated by the parties.

Eastern Dis.
April, 1833.

WILLIAMS'
vs.
PALMER.

The defendant pleaded the general denial, and judgment having been rendered against him, he appealed.

MARTIN, J. delivered the opinion of the court.

The plaintiff having sold to the defendant a number of bank shares, and the latter declining to comply with the terms of the sale, and thereby to complete the transfer, the present suit was instituted to recover in damages the difference between the price at which the stock was sold, and that which it brought on a resale. The general issue was pleaded, the plaintiff had a verdict and judgment, and the defendant appealed after an unsuccessful attempt to obtain a new trial.

The facts of the case are as follows: Williams deposed, that on the 5th of May last, as the defendant's broker purchased by his order the stock from Smith, the plaintiff's broker, and received and delivered to his employer a power of attorney to authorise him to vote, as the owner of the stock, for directors.

The defendant was informed on the 27th, by a letter from Williams, that the stock should be transferred on the forenoon of that day, and he was requested to pay the price agreed on to the clerk of the transfers, who on receipt thereof would issue the requisite certificate. This request was repeated from day to day, the defendant having promised to do so.

On the 29th Smith wrote to Williams, that stock which by the terms of the contract was to have been transferred

within twenty-five days, or sooner, had been transferred in blank, and was subject to his order. He complained that his verbal communications to that effect remained unattended to, and added, that unless this money was paid on the following day, the stock would be sold for the buyer's account. This note was communicated to the defendant on the 10th.

On the 2d of April, Williams was informed by Smith, that the stock had been resold, and that he and the defendant would be looked to for the deficiency. This was communicated by Williams to the defendant.

The testimony of Smith is to the same effect as that of Williams, as to the above facts. He added that he treated with Williams, knowing he acted merely as a broker, but without knowing for whom. He afterwards accidentally met the defendant who spoke to him about the bargain. The plaintiff handed to Smith a memorandum of the stock to be transferred on payment of the price, and Smith finding the defendant at the bank, showed him the memorandum, and gave him notice of the transfer, by drawing his attention to the transfer books. The defendant said all was right, but he could not then pay. After several applications to the defendant, and calls of Smith at the bank to see whether the transfer had been completed by the payment of the price, and the insertion of the defendant's name in the blank, the resale took place.

The defendant and appellant's counsel has relied on his bills of exceptions.

Two of them are to the judge's refusal to charge the jury.

1. That putting the defendant's broker *in morâ*, was insufficient to charge the principal, the court saying that in the circumstances of the case it was not.

2. That sufficient testimony had not been exhibited of the defendant being *in morâ*.

The last bill was to the admission in evidence of certain documents, being a part of the correspondence between the brokers.

I and II. It is necessary, in deciding on the two first bills, to take a view of the provisions of the *Louisiana Code*, as to the requisites to put the party *in morâ*.

The Code states three modes; by the terms of the contract, by the act of the creditor, and by the operation of the law, 1905. It is not pretended in this case, that the defendant was *in morâ*, by the terms of the contract or the operation of the law.

The party puts his adversary *in morâ*, when, at or after the time stipulated by the contract for the performance, he demands that it should be carried into effect, which demand may be made by the commencement of a suit, by a demand in writing, by a protest made before a notary public, or by a verbal requisition made in the presence of two witnesses. 1905, 2.

In this case it is not pretended that there was any suit commenced, any protest, or verbal requisition in the presence of two witnesses. A demand in writing must therefore be shown, unless it suffices, under a subsequent article of the Code, that the party who has to put his adversary *in morâ*, should perform the obligations imposed on him by the contract.

This article which is the 1907th is in the following words: "In commutative contracts, where the reciprocal obligations are to be performed, at the same time, or immediately one after the other, the party who wishes to put the other in default, must at the time and place expressed in, or implied by the agreement offer or perform, as the contract requires, that which on his part was to be performed, or *the opposite party will not be legally put in default.*"

If this article stood alone, the negative that the opposite party will not be legally put in default, might perhaps be correctly said to be pregnant with the affirmative, that on the mere performance of the previous requisite, the party is *legally* put in default. But a comparison of this article with the 1905th, does not admit the conclusion that the implication which may be drawn from it is sufficiently strong, (if any implication may be) to silence the *express* requisition in the

EASTERN DIS.
*April*, 1833.
══════════
WILLIAMS
*vs.*
PALMER.
other. The one must be received as a proviso, requiring in commutative contracts, no party should be said to have legally put his adversary *in morâ*, till he himself has performed the obligations incumbent on him.

The question now for our solution is, whether the defendant was put *in morâ* by Smith's letter to Williams, communicated to the defendant.

It is clear that this letter if it had been directed to the defendant himself, he would by the receipt of it be legally put *in morâ*, there is indeed no *express* demand of payment. But information is given that the plaintiff had, as far as he could, complied with his part of the obligation of the contract; complaint was made that his requisition is not attended to, and a threat made that if the payment be not made on a day named, the stock would be sold. This was clearly a demand in writing.

A letter in terms equivalent to a demand, addressed by the agent of the plaintiff, to that of the defendant, but intended for, and subsequently communicated to the defendant, puts him *in morâ*.

It is true the letter was addressed to Williams instead of being so to the defendant himself, but it was evidently from the whole testimony written for the eye of the defendant, delivered to his broker that it might reach it, and the evidence shows it was without delay communicated to the defendant.

On these facts we conclude that the judge correctly instructed the jury that the demand in writing, made in the letter of Smith to Williams, and by the latter communicated to the defendant, put him, the defendant *in morâ*.

On the second bill we assume that *the sufficiency* of the testimony alluded to, is its sufficiency to establish its *legal* consequence, if the facts deposed to, be believed. For as to the *sufficiency* of the testimony to create belief, the jury, not the court, are the legitimate judges.

In this point of view there cannot be a doubt that the judge did not err in instructing the jury, that if they believed the facts sworn, to be true, the defendant was legally put *in morâ*.

III. Neither do we believe he erred in admitting the letter of Smith to Williams to be read to the jury. These letters had both been communicated to him, and they are of use to explain his conduct after he had seen them; as what

is said even by a stranger in the presence of a party is allowed to be given in evidence, to explain his conduct, and even his silence. Besides Williams was his avowed agent, and he knew Smith to be the plaintiff's broker, and the communications all related to a contract which concerned them, and was entered into by his order.

On the merits the verdict of the jury is certainly correct, the defendant neglected or declined to comply with his contract, and he was properly charged in damages with the difference between the price he had purchased at, and that which was obtained on his failure, by a resale. His counsel has endeavored to urge, little credit is due to the witness who testified as to the resale, because after it took place the plaintiff offered to the defendant, the stock, if he would pay the price. This may have been with the consent of the purchaser, or may have been one of the conditions of the resale.

We have been referred to several decisions of ours, on the subject of the putting a party *in morâ.* They are 3 *Martin,* *N. S. p.* 564; *Bryon* vs. *Cox; Erwin* vs. *Forsyth,* 6 *id.* 229; *Llorente* vs. *Gaitrie, id.* 623, and that of *Wallace et al.* vs. *Smith et al.,* lately decided, but the view we have taken of the present case has rendered every comment on them useless.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, be affirmed with costs.

*Carleton* and *Lockett,* for appellant.

*Potts,* for appellee.

EASTERN DIS.
*April,* 1833.

WILLIAMS
*vs.*
PALMER.

The letters of one broker to another, through whom the parties entered into a contract, are admissible in evidence to explain the conduct of his employer.