359 So.2d 654 (1978)
Warren J. TULLIER, Sr., et al.
v.
TANSON ENTERPRISES, INC., et al.
No. 11921.
Court of Appeal of Louisiana, First Circuit.
May 1, 1978.
Rehearings Denied June 12, 1978.
*656 A. J. Spedale, Baton Rouge, of counsel, for plaintiff-appellee Warren J. Tullier, Sr., et al.
Leon Gary, Jr., Baton Rouge, of counsel, for defendant-appellant Tanson Enterprises, Inc.
Harvey H. Posner and Felix Weill, Baton Rouge, of counsel, for defendant-appellant Commercial Properties Development Corp. & Shopper's Fair Co./S. F. Realty.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Plaintiffs-appellees (Lessor) instituted these proceedings to cancel a long term ground lease originally granted to defendant, Commercial Properties Development Corporation (CPDC) and presently held by Tanson Enterprises, Inc. (Tanson) by virtue of intervening assignments. Cancellation of the lease is sought for default consisting of failure to timely pay rentals and other alleged defaults in contractual obligations.
The primary issue is whether notice of default was given in accordance with lease provisions. Secondarily, we are concerned with the use to which the property could be put by the lessee and the nature of repairs required to be made by lessee to improvements on the premises.
On January 21, 1958, Benjamin J. Tullier and his wife, Pearl P. Tullier leased subject premises to CPDC for an original 25 year term at a rental of $750.00 monthly. At lessee's option, the lease was made renewable for two consecutive 25 year terms and a final 24 year term at the same rental. Benjamin J. Tullier died; his widow and heirs are plaintiffs herein.
On October 9, 1959, CPDC assigned its interest in the lease to Shoppers Fair Company, a partnership composed of Wilbur Marvin and Kenneth M. Kurson. Shoppers Fair Company subsequently became S. F. Realty, a partnership also composed of Marvin and Kurson. On June 24, 1963, S. F. Realty assigned its interest to Tanson. This action was instituted by Lessor on April 27, 1976, seeking cancellation for failure of Tanson to timely pay rentals due December 1, 1975, January 1, February 1, and March 1, 1976, and other alleged defaults. Lessor sought payment of past due rent, 1975 property taxes, attorney's fees and the cost of repairs required to maintain the improvements suitable for use as a shopping center.
Named defendants are: CPDC; Tanson; Shoppers Fair Company; S. F. Realty; Mangel Stores Corporation, a holding company owning Shoppers Fair of Baton Rouge, Inc., which was a former sub-lessee; and Prudential Life Insurance Company, a leasehold mortgagee. Mangel Stores Corporation, Shoppers Fair of Baton Rouge, Inc., and Prudential have been dismissed from the action.
Tanson reconvened against Lessor claiming damages for alleged constructive eviction resulting from Lessor's action to cancel the lease, and of course, resisted Lessor's effort to cancel. Shoppers Fair Company, S. F. Realty and CPDC joined Tanson in *657 resisting Lessor's demands and third partied Tanson seeking judgment against Tanson, for whatever amounts said third party plaintiff might be cast to Lessor.
The trial judge found Tanson in default for failing to timely pay rentals and taxes due on the leased premises. Judgment was rendered in favor of Lessor against Tanson, CPDC, Shoppers Fair Company and S. F. Realty ordering cancellation of the lease and against said defendants in solido for rentals due December, 1975 April, 1976, in the sum of $3,750.00 and also the sum of $54,187.00 required to repair improvements to make them usable for shopping center purposes. Lessor's demand for attorney's fees was rejected. Judgment was also rendered in favor of CPDC, Shoppers Fair Company and S. F. Realty against Tanson on the third party demand against Tanson. Tanson's reconventional demand against Lessor was dismissed.
Tanson, CPDC, Shoppers Fair Company and S. F. Realty have appealed the judgment against them in favor of Lessor. They maintain that there was no default and no basis for the trial judge's award of damages for repair predicated on use of the premises for shopping center purposes. Tanson also appeals dismissal of its reconventional demand against Lessor and the judgment rendered against it on the third party demand. Third party plaintiffs pray for judgment in their favor against Tanson for any amount they may be cast to Lessor on appeal.

FACTUAL BACKGROUND
Tanson is a New York corporation with no office or place of business in Louisiana. From its acquisition of the lease in 1963 until December, 1975, Tanson paid all rentals promptly and apparently complied with all provisions of the lease, without complaint. After acquiring the lease, CPDC, or its assigns, constructed improvements which made the premises a shopping center. One structure, containing 45,000 square feet of space, was sub-leased to a retail outlet known as Shoppers Fair of Baton Rouge, Inc., a discount division of Mangel Stores Corporation. A second building, containing 30,100 square feet, was sub-leased to and occupied by a food chain known as Krogers. Prior to 1973, the site declined as a shopping center location. One of the buildings burned, but was reconstructed. Eventually, the premises became vacant and were subject to extensive vandalism, particularly the structure previously occupied by Krogers. The black topped parking area fell into disrepair and developed numerous holes. It appears that prior to December, 1975, Tanson was considering the possibility of abandoning the lease. Tanson did not pay rent due on December 1, 1975, nor did it pay rent due January 1, 1976.
Article 3 of the lease provides for payment of rental monthly on the first day of each month by check payable to Benjamin J. Tullier and Pearl P. Tullier, addressed to Baton Rouge, Louisiana.
Rider B attached to the lease requires the tenant to pay all taxes and other assessments levied or charged against the property. It recites that tenant: "will if requested by Landlord, on or before the first day of March of each year, exhibit to the landlord receipts showing that all taxes and any such assessments for the preceding year have been paid, and will, upon written application of Landlord, furnish Landlord for inspection and such use as may be proper in protecting the interest of Landlord in said premises, the written evidence of any and all such payments whenever demanded."
Article 11 of the lease grants lessee the privilege of erecting such improvements as lessee sees fit. In the event of destruction of a building, lessee is obligated to reconstruct a similar building. This article also provides:
"The tenant shall be responsible for and keep the exterior, roof, appurtenances thereto (which shall include sidewalks, abutting on the demised premises) in good order and repair. The Tenant agrees to maintain and keep in repair the interior and store front of any building or improvement now or hereafter upon the demised premises. Tenant agrees to restore promptly any and all plate glass in *658 or about the demised premises which may become damaged or broken."
Use of the premises is governed by Article 7 of the lease which states: "The premises hereby demised shall not be used for any unlawful purpose during the term of this lease." Also regarding use, Rider C clearly indicates that the parties intended the improvements to be erected by lessee were for operation of a "chain store". Rider D expressly obligates the lessee to construct "a . . . one story (or multi-story) building . . . designed for chain store occupancy".
Default is defined and governed by Article 18, which states:
"This lease is made upon the condition that the Tenant shall perform all the covenants and agreements herein set forth to be performed by it, and if, at any time, any rent or other charge shall become in arrears and unpaid for a period of thirty (30) days after the same shall become due, or if any of the covenants or agreements to be carried out or performed by the Tenant shall not be performed as herein stipulated, within the period of thirty days (30) after default in the performance of said covenants and agreements, then the Landlord, at Landlord's option, upon first giving thirty (30) days written notice to the Tenant and to any mortgagee, sub-lessee, or assignee, as herein elsewhere set forth, shall have the right to enter upon the above described and demised premises at any time after the expiration of said thirty (30) days written notice, and take possession thereof, and bring suit for and collect any rents, or other charges which may have accrued up to the time of such re-entry, provided that the Tenant or any mortgagee, assignee, or sub-lessee during said thirty (30) day period, after written notice shall have been given, shall have the right to settle and pay in full any and all rightful claims of Landlord under this instrument which are then delinquent, or take any other action necessary to cure Tenant's default, and further provided that such thirty (30) day period shall be extended, if necessary, in the event that Tenant, or any mortgagee, assignee, or sub-lessee shall commence to cure said default and shall diligently pursue same to completion."
Notice by Lessor to Tenant is provided for by Article 24 which requires notice by registered mail, in duplicate, one copy to P. O. Box 1693, Baton Rouge, Louisiana, and one copy to 333 Laurel Street, Baton Rouge, Louisiana, or such other address as the Tenant may subsequently designate. Notice by Tenant to Lessor is required to be sent to Benjamin J. and Pearl P. Tullier, 4523 Plank Road, Baton Rouge, Louisiana, Lessor being obligated to notify Tenant of an address change.
It is conceded that Tanson did not timely pay rent due December 1, 1975, and January 1, 1976. It is also conceded that prior to this default Tanson had complied with all provisions of the lease.
On January 19, 1976, Lessor mailed notice of default to Ben R. Miller, attorney, Baton Rouge, Louisiana, as alleged representative of CPDC, Shoppers Fair of Baton Rouge, Inc., Mangel Stores Corporation and Charles F. Noyes Co., Inc. The notice demanded payment of $1,500.00 rental due for December, 1975 and January, 1976; payment of 1975 property taxes in the amount of $7,479.90; repair of all damage to buildings and parking area; and attorney's fees in the amount of $500.00. It is conceded, however, that the lease does not provide for attorney's fees in the event of Tenant's default. The notice demanded compliance within 30 days as provided by Article 18.
A second notice was mailed by Lessor on February 17, 1976. This notice was sent to Harvey Posner, Attorney, as representative of Shoppers Fair of Baton Rouge, Inc.; CPDC, Wilbur Marvin and Kenneth M. Kurson; Robert A. Hawthorne; Robert J. Conrad, as attorney for Prudential Life Insurance Company; Mangel Stores Corporation; and Tanson (at an address different from the correct address used in the first notice). This latter notice demanded the following performances on or before March 1, 1976: Payment of rental due December, *659 1975 February, 1976; payment of 1975 property taxes; repair of damage to buildings and parking area; and payment of $2,000.00 attorney's fees.
At 11:00 A.M., March 1, 1976, Tanson wired from New York a sum sufficient to pay the 1975 property taxes, $500.00 attorney's fees and rentals due through April, 1976. Transmittal of the funds was delayed one day, however, because of malfunction of the transmittal device of the forwarding bank and another day because of Mardi Gras, which was a bank holiday. The transmitted funds were made available to Lessor's attorney according to a letter of March 3, 1976 from Tanson's attorney. Communication ensued between the attorney for Lessor and Tanson's attorney concerning payment of attorney's fees and the nature of repairs Lessor desired to be made to the buildings. Tanson's requests for Lessor's specification of repairs were consistently declined by Lessor. In late March, 1976, Lessors informed Tanson's attorney of Lessor's refusal to accept the tendered payment. On May 5, 1976, Tanson paid the 1975 taxes. Tanson did not commence any repairs prior to institution of this suit.

FINDINGS OF THE TRIAL COURT
Finding Ben R. Miller, Jr. to be the agent of Wilbur Marvin, Kenneth M. Kurson and S. F. Realty Company, the trial judge found that the January 19, 1976 notice to Miller constituted notice to these parties. Lessor urges that this conclusion is proper and urges, alternatively, that service on these parties is of no consequence since said parties are not liable herein because they no longer hold an interest in the lease. Tanson maintains, however, that this finding is erroneous because Miller did not represent these parties. Tanson also contends these parties were entitled to notice because the lease requires notice to all assignees and sub-lessees, any of whom are expressly authorized to cure an alleged default.
The trial judge relied upon La.C.C. Article 3000 as authority for holding that Miller was the representative of the named parties. This provision states that authority granted to persons exercising a profession, or fulfilling certain functions, or conducting business in the ordinary course of affairs in which they engage, need not be specific, but is inferred from the functions which these mandatories exercise. The trial judge also found that the notice of February 17, 1976, was a mere gratuitous extension of the first notice.
It is settled law that the attorneyclient relationship is contractual in nature and based on the express agreement of the parties as to the nature of the work undertaken by the attorney. Agreement of an attorney to represent a client as to a particular matter does not create an agency relationship as regards other business affairs of the client. Grand Isle Campsites v. Cheek, 262 La. 5, 262 So.2d 350 (1972). To the same effect, see Crane Supply Company v. Drake and Planche, Inc., 255 So.2d 188 (La. App.4th Cir.1971); Delta Equipment and Construction Co. v. Royal Indemnity Co., 186 So.2d 454 (La.App. 1st Cir. 1966).
Mr. Miller testified that while he had represented these parties on other matters in the past, he did not represent either of them with respect to the lease in question.
The trial judge also relied upon Williams v. Palmer, 5 La. 372 (1833), and other authorities, a review of which discloses that they deal with instances in which notice was given to one who was clearly the agent of the party for whom the notices were intended. The issue here is not whether an agent may be properly served, but whether the alleged agent was in fact an agent with respect to the matter in question. We find that Miller was not the agent of the parties intended to be served and that the trial judge erred in holding otherwise.
Notwithstanding La.C.C. Article 2712 (which provides that a lessee may be evicted for failure to pay rentals timely), our jurisprudence holds that abrogation of leases is not favored in law. Stoltz v. McConnell, 202 So.2d 451 (La.App. 4th Cir. 1967); Arbo v. Jankowski, 39 So.2d 458 (Orl.La.App.1949).
Dissolution of a lease will be decreed only when it is shown that the lessor is *660 clearly entitled thereto. Arbo v. Jankowski, above.
More significantly, our Supreme Court has held in Brewer v. Forest Gravel Company, 172 La. 828, 135 So. 372 (1931), that while a lessor may ordinarily dissolve a lease for failure of the lessee to pay rentals timely, the right is subject to judicial control according to the circumstances of each case. This same rule was recognized and followed in Baham v. Faust, 333 So.2d 261 (La.App. 1st Cir. 1976).
We find, in this instance, that Tanson made a good faith effort to cure the defaults. It submitted payment of the rentals and paid the taxes. That the rentals were not received timely was not due to Tanson's fault. Although the taxes were not paid when due on December 31, 1975, we note that the lease provides no specific date for payment of taxes. We also note that Tanson stood ready to pay the taxes and did in fact make such payment with no loss to Lessor. Moreover, Tanson indicated willingness to make repairs and refrained from doing so only because Tanson could not get Lessor to specify the repairs which Lessor deemed in order. Under the circumstances of this case, we find no violation on Tanson's part sufficient to warrant termination of the lease.

USE OF THE LEASED PREMISES
Tanson's argument that Article 7 permits any lawful use of the premises is not supported by the lease provisions. Article 7 does not so state. It provides only that the premises shall not be used for any unlawful purpose. Riders C and D, mentioned hereinabove, reflect the intent of the parties to utilize the property as a shopping center. The record also reflects that from the outset, the premises have been devoted to use as a shopping center. We find that the trial judge correctly resolved this issue.
LIABILITY OF CPDC, S. F. REALTY COMPANY, WILBUR MARVIN AND KENNETH M. KURSON
Article 22 of the lease grants Lessee the right to assign or sub-let the premises in whole or in part. It also states that in the event of assignment of the whole, Lessee is relieved of all liability to Lessor provided: (1) Lessee is not in default at the time of assignment; (2) assignee assumes Lessee's obligations under the lease; (3) an executed copy of the assignment, suitable for recording, has been delivered to Lessor; and (4) assignee is a responsible party and a good financial risk to Lessor.
The record does not support Lessor's claim that these parties failed to comply with requirement (3) above. The record contains a letter from said parties to Lessor informing Lessor of assignment and that Assignor recorded the assignment. Under the circumstances, these parties cannot be held liable to Lessor.
LESSOR'S CLAIM FOR RENT DUE FROM DATE OF SUIT UNTIL TERMINATION OF THE LEASE
Article 18 of the lease provides that Lessor may, after expiration of the 30 day notice period, enter the premises "and take possession thereof, and bring suit for and collect any rents, or other charges which may have accrued up to the time of such re-entry, . . .". Upon filing suit, Lessor effectively re-entered the premises and thus deprived Tanson of use of the property. For this reason, the trial judge properly held Tanson liable for the $3,750.00 rental which accrued prior to suit.

TANSON'S RECONVENTIONAL DEMAND
This is basically a claim for alleged damages resulting from Tanson's reputed constructive eviction by the filing of Lessor's suit. It is charged that the suit deprived Tanson of effective use of the premises. The major proof offered in support of this claim relates to a proposed sub-lease between Tanson and the Optimist Club of Baton Rouge for the club's use of the premises as the site of the club's 1976 Spring Fair. In March, 1976, a tentative *661 agreement was reached between Tanson and the club by which the club agreed to repair the parking area and make certain building repairs in return for use of the premises. Suit was not filed by Lessor until April 27, 1976. At the time of the negotiations between Tanson and the club, Tanson was in legal control of the premises. That Lessor refused its consent is a matter of no moment. Lessee confined its proof mainly to the Optimist Club incident and now requests a remand to allow further proof of this claim.
The law does not favor piecemeal trial of lawsuits. Tanson has had its day in court. Exercising the discretion vested in us in matters of this nature, we decline the request for remand.

DECREE
IT IS ORDERED, ADJUDGED AND DECREED THAT: (1) The judgment of the trial court ordering cancellation of the lease is annulled, reversed and set aside and judgment rendered herein in favor of Tanson decreeing the lease in full force and effect; (2) The judgment in favor of Lessor and against Tanson for delinquent rental in the sum of $3,750.00 due prior to institution of suit is affirmed; (3) The judgment in favor of Lessor against Tanson in the sum of $54,187.00 for repairs is reversed and set aside; (4) The judgment decreeing that the property was intended for shopping center usage and purposes is affirmed; (5) The judgment in favor of Lessor against CPDC, S. F. Realty Company, Wilbur Marvin and Kenneth M. Kurson is reversed and set aside; (6) The judgment in favor of CPDC, S. F. Realty Company, Wilbur Marvin and Kenneth M. Kurson on their third party demand against Tanson is reversed and set aside; and (7) The judgment rejecting Lessor's claim for rental subsequent to filing suit is affirmed. Cost of these entire proceedings to be paid one-half by plaintiff-lessor and Tanson.
Affirmed in part, reversed in part and rendered.