1McKAY, Judge.
The plaintiff, Henry C. Spicer, III, appeals from the trial court’s granting of the defendants’, Byron Casey, Ill’s and Gary Gambel’s, motions for summary judgment which dismissed the plaintiffs actions against those defendants. We affirm.
FACTS AND PROCEDURAL HISTORY
In August of 1991, Mr. Spicer retained Gregory F. Gambel, an attorney practicing in New Orleans, to represent him in a suit against his former employer, LP & L/En-tergy, arising from that employment relationship. On December 17,1997, while the aforementioned suit was still ongoing, Mr. Gambel sought counseling at a drug rehabilitation facility in California after being arrested for forging a prescription for Per-codan. Soon thereafter, Mr. Gambel was placed on inactive status by the Disciplinary Board of the Louisiana Bar Association.
On December 22, 1997, LP & L/Entergy filed an application for supervisory writs with this Court. Mr. Gambel’s office was subsequently notified that the Court had granted the application for supervisory writs and that if any party wished | Pto file additional briefs they must be filed by *743 January 16, 1998. Mr. Gambel was still in California at that time. On January 12, 1998, Carole Nungesser, Mr. Gambel’s secretary, informed Byron Casey, III, an attorney who shared office space with Mr. Gambel, about the situation and asked him how to proceed. Thereupon, Mr. Casey contacted Danielle Schott, the Clerk of the Fourth Circuit Court of Appeal, and apprised her of the situation. Ms. Schott informed Mr. Casey that he.could file for an extension of time to. file briefs as a courtesy to Mr. Spicer and that such filing would not be deemed as an appearance by Mr. Casey before the Court.
Mr. Casey filed a motion for extension of time on behalf of Mr. Spicer. On January 14, 1998, this Court granted Mr. Spicer an extension until January 80, 1998 to file a brief. Mr. Casey faxed Mr. Spicer a copy of the motion together with the order granting the extension of time. In the meantime, Mr. Spicer called to speak to Mr. Gambel. Mr. Casey took the call and informed Mr. Spicer that he had obtained an extension of time for him but that Mr. Gambel would no longer be able to represent him and that he would have to obtain new counsel. At this time, Mr. Spicer asked Mr. Casey to represent him but Mr. Casey declined to do so. However, because Mr. Gambel would not be back in New Orleans before January 30, 1998, Mr. Casey filed another motion for extension of time for Mr. Spicer. This Court granted Mr. Spicer an extension until February 6, 1998. Mr. Casey faxed copies of the motion and the order granting the extension to Mr. Spicer on January 28,1998.
13At the end of January 1998, Mr. Casey moved out of the office he shared with Mr. Gambel and relocated his practice to an office in Metairie. One morning in the middle of March 1998, Mr. Casey arrived at his office to find that an envelope had been pushed under the door. The envelope was from Mr. Gambel; it contained a copy of a brief that Mr. Gambel had prepared for Mr. Spicer’s appeal along with a note asking Mr. Casey to sign the brief as counsel of record. The next day Mr. Gam-bel called Mr. Casey to see if he had signed the brief. Mr. Casey informed him that he had not signed the brief and was not going to sign it. On April 9, 1998, Mr. Casey received a copy of an opinion rendered by this court in the matter of Henry C. Spicer, III versus Louisiana Power & Light Company, which listed him as Mr. Spicer’s attorney of record. Thereupon, Mr. Casey contacted the clerk’s office of this Court and examined the record. It was determined that Mr. Casey’s name was a forgery and his name was removed from the case as Mr. Spicer’s attorney of record.
In April of 1998, on the eve of a filing deadline, Gregory Gambel approached his nephew, attorney Gary Gambel, and asked him to sign an application for rehearing that he had prepared. Faced with the possibility that Mr. Spicer’s case would be lost because a procedural deadline was missed, Gary Gambel reluctantly agreed to sign the application. In June of 1998, Gregory Gambel contacted Gary Gambel on the very date of a filing deadline for a writ application to the Louisiana Supreme Court. Gregory Gambel advised his nephew that another attorney had agreed to file the writ, but had not done so, and Mr. [¿Spicer’s claim would be lost if the application was not filed that day. After initially refusing to sign the pleading, Gary Gambel reluctantly succumbed to his uncle’s pleas and affixed his signature to the document. These pleadings were all prepared by Gregory Gambel. At no time did Gary Gambel ever meet or even speak with Mr. Spicer.
Mr. Spicer’s appeal, application for rehearing, and writ of certiorari in his under *744 lying suit against LP & L/Entergy were all unsuccessful.[1] Thereupon, Mr. Spicer sued Gregory Gambel, Gary Gambel and Byron Casey, III for malpractice, alleging that their conduct and malfeasance cost him the loss of his claims. Both Byron Casey, III and Gary Gambel filed motions for summary judgment, which the trial court granted and dismissed Mr. Spicer’s claims against them. It is from this judgment that Mr. Spicer now appeals.
DISCUSSION
On appeal, the plaintiff raises the following assignments of error: 1) the trial court erred by failing to find an attorney-client relationship between Henry C. Spicer, III and the attorney who filed two pleadings on his behalf in the court of appeal; 2) the trial court erred by failing to find an attorney-client relationship between Henry C. Spicer, III and the attorney who filed on his behalf an application for rehearing in the Fourth Circuit Court of. Appeal and later a writ of certiorari to the Louisiana Supreme Court; and 3) the trial court erred by failing to find that two attorneys who “covered” for a friend who had lost his license to | ¡¡practice law, committed a tort against the client by failing to advise him of the problems of which they were aware.
In order to state a claim for legal malpractice, a plaintiff must allege that there was an attorney-client relationship, and that the attorney was negligent in his representation of the client and that that negligence caused plaintiff loss. Evans v. Detweiler, 466 So.2d 800 (La.App. 4 Cir.1985); Ramp v. St. Paul Fire & Marine Ins. Co., 263 La. 774, 269 So.2d 239 (1972). The relationship between an attorney and his client is purely contractual in nature and results only from a clear and express agreement between the parties. Keller v. LeBlanc, 368 So.2d 193 (La.App. 1 Cir.1979). Establishment of an attorney-client relationship is adequately proven when it is shown that the advice and assistance are sought and received in matters pertinent to his profession or when the agreement of representation has been made under conditions acceptable to both parties. State v. Green, 493 So.2d 1178 (La.1986); Lirette v. Roe, 93-0441 (La.App. 4 Cir. 1/13/94) 631 So. 503. Although, in Lirette, this Court stated: “The existence of such a relationship turns upon the client’s subjective belief that the attorney-client relationship exists”, it went on to say “[w]e do not believe an attorney-client relationship can exist in the absence of any initial communication, either verbal, written or otherwise, between the attorney and the client.” 631 So.2d at 503 and 506.
In the instant case, the contacts between Mr. Spicer and Byron Casey, III and Gary Gambel were minimal to nonexistent. Mr. Casey, when informed by Gregory Gambel’s secretary that a filing deadline was approaching in Mr. Spicer’s | fiCase and that Gregory Gambel would not be back from California before the deadline, filed a motion for extension of time on behalf of Mr. Spicer after being assured by the Clerk of this Court that such filing would not be deemed as an appearance by him on the record. Mr. Casey had not previously spoken with Mr. Spicer. In fact, the only communication (other than copies of motions for extensions of time) between Mr. Casey and Mr. Spicer occurred several days after Mr. Casey filed the motion for extension of time when Mr. Casey took a call that Mr. Spicer had placed to Gregory Gambel. During their conversation, Mr. Casey advised Mr. Spi- *745 cer that Mr. Gambel would no longer be able to represent him; Mr. Casey also declined to represent Mr. Spicer during this conversation. Mr. Spicer’s contention that he had a subjective belief that Mr. Casey and Gregory Gambel were partners and that Mr. Casey was acting as his attorney cannot be relied on because Mr. Casey informed Mr. Spicer that he would not represent him. The actions taken by Mr. Casey were done strictly to give Mr. Spicer the opportunity to salvage his case. Furthermore, any representations made by or deeds done by Gregory Gambel should not be imputed to Mr. Casey. It is clear from the record that an attorney-client relationship did not exist between Mr. Casey and Mr. Spicer.
Gary Gambel never met with or spoke with Mr. Spicer. He reluctantly affixed his signature to two pleadings that his uncle had prepared in Mr. Spicer’s underlying suit against LP & L/Entergy. Gary Gambel signed these pleadings because their filing deadlines were fast approaching and because he felt a sense of obligation to help his uncle out of a corner. Mr. Spicer was not even aware that 17Gary Gambel had signed these pleadings until well after they had been filed. There is no way that Mr. Spicer could have had a subjective belief that an attorney-client relationship existed between Gary Gambel and himself.
Mr. Spicer’s third assignment of error is without merit. As no attorney-client relationship existed between Mr. Spicer and either Mr. Casey or Gary Gambel, neither of these attorneys owed any duty to Mr. Spicer to inform what they knew about Gregory Gambel. In fact, Mr. Casey did more than enough by telling Mr. Spicer that Gregory Gambel would no longer be able to represent him and advising him that he would need to get another attorney.
CONCLUSION
For the foregoing reasons, we find no error in the trial court’s granting of the defendants’ motions for summary judgment. Where there is no genuine issue of material fact, the defendant is entitled to a judgment as a matter of law. La. C.C.P. art. 966 C(2); Motton v. Lockheed Martin Corp., 97-0204 (La.App. 4 Cir. 12/1/97), 703 So.2d 202. In the instant case, there is no disagreement about what took place. Therefore, there is no genuine issue of material fact. Furthermore, we find no error in the trial court’s application of the law. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.

. In an opinion By Judge Ciaccio in Mr. Spi-cer’s underlying suit against LP & L/Entergy, this Court found that based upon Mr. Spicer's own deposition, he failed to factually support the essential element of falsity needed in an action for defamation.