STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
10-1083
C/W 10-1084


JOHN HAAS WEINSTEIN

VERSUS

LINDA ALLEN WEINSTEIN


**********
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 05-0472 c/w 08-1744
HONORABLE ELLIS DAIGLE, DISTRICT JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, Billy Howard Ezell, J. David Painter, and James T. Genovese, Judges.


**AFFIRMED IN PART AND REVERSED IN PART.**


**Amy, J., concurs in part, dissents in part, and assigns reasons.**
**Genovese, J., dissents in part, and assigns written reasons.**

**Christine M. Mire**
**202 W. Main Street**
**Lafayette, LA 70501**
**Counsel for Defendant/Appellant:**
    **Linda Allen Weinstein**

**David L. Carriere**
**322 South Market Street**
**Opelousas, LA 70570**
**Counsel for Plaintiff/Appellee:**
    **John Haas Weinstein**

**PAINTER, Judge**.

Defendant, Linda Allen Weinstein, appeals the trial court's judgment regarding the existence of a community regime between her and her former husband, John Haas Weinstein, and the amount of child support to be paid for their minor child. For the following reasons, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

John and Linda were married on August 8, 1986. On August 7, 1986, the day before the wedding, they signed a separation of property agreement. Two children were born of the marriage, only one of whom was a minor at the time of the ruling from the child support hearing appealed herein. On August 7, 1997, they filed a joint petition to affirm an agreement establishing a community property regime. On that same day, an order was signed recognizing the agreement establishing a community property regime. They separated in March 2004, and a judgment of divorce was signed on April 1, 2005.

On January 21, 2010, after a lengthy hearing, the trial court rendered a partial final judgment finding that the prenuptial agreement was effective in creating a separation of property regime between the parties. The judgment also granted a motion for involuntary dismissal as to the claims that the trial court order established a community regime in August 1997. Linda appeals.

## DISCUSSION

Involuntary Dismissal

After the hearing on the matrimonial regime, counsel for John moved orally for involuntary dismissal. The trial court denied the motion and asked for memoranda from the parties before his final ruling. John filed a motion for new trial or to

1

reconsider the motion for involuntary dismissal which the trial court granted. Linda asserts that this was error on the part of the trial court.

Linda argues that the trial court's action violates La.Code Civ.P. art. 1672 which provides for involuntary dismissal. This article provides, in pertinent part, as follows:

> B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

We find no authority which suggests that a trial court may not reconsider its denial of the motion prior to the presentation of the defendant's case. Therefore, we find that the motion was timely filed and that no procedural bar existed to prevent the court from considering it.

Prenuptial Agreement

Linda next asserts that the trial court erred in finding the prenuptial agreement to be valid and in granting the motion for involuntary dismissal in that regard. She argues that she signed the contract as a result of fraud on the part of John and that John was in violation of the rules of professional conduct in that he was her lawyer at the time they entered into the contract and was prohibited from contracting with her where they had differing interests in the contract.

> Consent, which is necessary for the formation of a valid contract, may be vitiated by error, fraud, or duress. La. C.C. art. 1948. In order to establish that a party's consent to a contract has been vitiated due to error, the error must concern a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949. Cause is defined as the reason why a party obligates himself. La. C.C. art. 1967.

2

Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.

La. C.C. art. 1950. However, in order to establish that a party's consent has been vitiated due to fraud, the error need not concern the cause of the obligation, but it must concern a circumstance that has substantially influenced the party's consent. La. C.C. art. 1955.

*Greenland v. Greenland*, 08-2568, pp. 4-5 (La.App. 1 Cir. 12/9/09), 29 So.3d 647, 651, *writ denied*, 10-0004 (La. 3/5/10), 28 So.3d 1011.

Louisiana Civil Code Article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Further, "[f]raud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence." La.Civ.Code art. 1957. *See Alvis v. CIT Group/Equip. Fin., Inc.*, 05-0563 (La.App. 3 Cir. 12/30/05), 918 So.2d 1177, *writ denied*, 06-0226 (La. 4/24/06), 926 So.2d 552. In support of her allegations of fraud, Linda introduced into evidence a diary entry by John written approximately ten years after his marriage in which he examined his feelings about his marriage and ways in which he felt he could or could have improved his relationship with his wife and his failures in so doing. The trial court did not feel that this document was evidence of fraud, and we cannot say that it rises to the level of indicating "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other" at the time the marriage agreement was entered.

Linda further asserts that John violated the rules of professional conduct by entering into a marriage contract with her while he was acting as her attorney. As

3

John notes, there is no positive law prohibiting an attorney from entering a prenuptial agreement with a client. However, John argues that his representation of her in connection with her prior divorce did not encompass representation as to the prenuptial contract. We agree that to assert a conflict in this regard, Linda had the burden of showing that John's representation extended to the prenuptial contract.

> The relationship between an attorney and his client is purely contractual in nature and results only from a clear and express agreement between the parties. *Keller v. LeBlanc*, 368 So.2d 193 (La.App. 1 Cir.1979). Establishment of an attorney-client relationship is adequately proven when it is shown that the advice and assistance are sought and received in matters pertinent to his profession or when the agreement of representation has been made under conditions acceptable to both parties. *State v. Green*, 493 So.2d 1178 (La.1986); *Lirette v. Roe*, 93-0441 (La.App. 4 Cir. 1/13/94) 631 So.[2d] 503.

*Spicer v. Gambel*, 00-1995 (La.App. 4 Cir. 6/20/01), 789 So.2d 741, 744.

While it is well established that the existence of an attorney-client relationship depends to a great degree on the client's subjective belief that it exists, the belief must be reasonable. *St. Paul Fire and Marine Ins. Co. v. GAB Robins N. Am., Inc.*, 08-331 (La.App. 4 Cir. 11/19/08), 999 So.2d 72. Additionally, "[a]greement of an attorney to represent a client as to a particular matter does not create an agency relationship as regards other business affairs of the client." *Massey v. Cunningham*, 420 So.2d 1036, 1038 (La.App. 5 Cir. 1982), *quoting Tullier v. Tanson Enterprises, Inc.*, 359 So.2d 654 (La.App. 1st Cir.1978).

It is uncontested that John, as well as several other attorneys, represented Linda in connection with a prior divorce. However, our examination of the record does not reveal enough proof to show that the scope of that representation extended to the prenuptial agreement. The record does not contain any testimony from Linda as to

4

her subjective belief in this regard, nor did she introduce a contract evidencing an attorney-client relationship in connection with the prenuptial agreement.

Additionally, the record shows that Linda received advice to seek separate legal representation with regard to the prenuptial agreement and chose not to follow that advice. Counsel for Linda called Anthony Fazzio, an attorney practicing in Lafayette, Louisiana, to testify at the hearing on the marital regime. In response to questioning by counsel for Linda, Fazzio testified as follows: John was a friend since law school, and he had occasionally been co-counsel on cases with John. He enrolled as counsel on Linda's prior divorce at John's request. John and Linda showed up at his office without an appointment, and Linda asked to speak to him in private and told him that John wanted her to sign a prenuptial agreement. He asked her if she understood that he was a friend of John's. He further instructed her that she should get someone to read the document and prepare it from her point of view. He told her that while it would protect her if anyone sued John, it would also keep her from sharing in his successes, and she responded by saying that she was not interested in John's money. A short time later, John and Linda came back, and the agreement was signed and notarized in front of witnesses.

In light of the evidence of record, we find no error in the trial court's ruling with regard to the validity of the prenuptial agreement and in granting the motion for involuntary dismissal in that regard.

Attorney-Client Privilege

Linda next asserts that the trial court erred in finding that there was no attorney-client privilege between Linda and attorneys Shepton Hunter, John Haas Weinstein, Anthony Fazzio, and David L. Carriere as to the prenuptial agreement.

However, we find no error in this finding. We have already found that Linda failed to carry her burden of showing that John was acting as her legal representative in connection with the prenuptial agreement. Further, there is no evidence that David Carriere ever acted as Linda's legal representative. With regard to the attorney-client privilege, if any, arising out of an attorney-client relationship between Linda and either Fazzio or Hunter, we find that Linda waived any such privilege by calling them as witnesses and questioning them concerning potentially privileged matters. La.Code. Evid. art. 502 provides that the holder of a privilege may waive it by disclosing the privileged information or by consenting to its disclosure. Linda consented to the disclosure of any information testified to by Fazzio and Hunter at her behest.

Establishment of Community Regime

Linda next asserts that the trial court erred in finding that the August 7, 1997 order establishing a community property regime between her and John was invalid and in granting the motion for involuntary dismissal in that regard.

Louisiana Civil Code Article 2329 provides that parties may "subject themselves to the legal regime by a matrimonial agreement at any time without court approval." The agreement must be in authentic form or in the form of an act under private signature duly acknowledged by the parties. La.Civ.Code art. 2331. "An act under private signature is regarded prima facie as the true and genuine act of a party executing it when his signature has been acknowledged, and the act shall be admitted in evidence without further proof." La.Civ.Code art. 1836.

> An act under private signature may be acknowledged by a party to that act by recognizing the signature as his own before a court, or before a notary public, or other officer authorized to perform that function, in the presence of two witnesses. An act under private

6

signature may be acknowledged also in any other manner authorized by law.

Nevertheless, an act under private signature, though acknowledged, cannot substitute for an authentic act when the law prescribes such an act.

La.Civ.Code art. 1839. Thus the law does not require that an agreement establishing a community property regime be authorized by a judge, nor does it prohibit its being approved by or acknowledged in front of a judge.

In this case, John and Linda signed an agreement establishing a community property regime on May 15, 1997, and filed an action to have the court recognize the agreement on August 7, 1997. The agreement was approved on that date by Judge Alonzo Harris of the Twenty-Seventh Judicial District Court for the Parish of St. Landry in the proceeding entitled "In the Matter of John Haas Weinstein and Linda Allen Weinstein," Docket No. 97-C-3000-B of that court.

The agreement was confected at John's instigation by Attorney Shepton Hunter who was not, by his own admission, familiar with the law concerning marital regimes. The agreement, signed by John and Linda and one witness, was attached to a "Joint Petition to Affirm Agreement Establishing Legal Regime." That petition, also signed by John and Linda, was filed in the district court. Judge Harris signed an order recognizing their agreement and ordered that a community regime be established between the parties. We note that John does not dispute that he intended to establish a community regime by signing this agreement.

The trial court did not reach the issue of whether the agreement underlying the court's order was effective, finding only that the court's order did not establish a community regime and noting that further evidence would be required as to the

7

effectiveness of the agreement. For that reason, the trial court granted the motion for

involuntary dismissal as to Judge Harris' order.

After reviewing that petition and the trial court's order, we find the order to be

in the nature of a consent judgment, as it is a bilateral contract embodying the mutual

consent of the parties.

> A consent judgment is a determination of the rights of the parties and acquires the authority of the thing adjudged. *McLain v. McLain,* 486 So.2d 1044 (La.App. 2d Cir.1986); *Townsend v. Townsend,* 421 So.2d 969 (La.App. 3d Cir.1982), *writ denied,* 427 So.2d 1211 (La.1983). The thing adjudged is said of that which has been decided by final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been affirmed on appeal. La.C.C. art. 3556(31); *McLain,* 486 So.2d at 1046.

*Thibodeaux v. Thibodeaux*, 511 So.2d 102, 105 (La.App. 3 Cir. 1987).

The methods by which a final judgment may be attacked are well delineated:

> The law sets forth the various methods whereby a judgment may be attacked. A party may sue to have the judgment declared a nullity for vices in either form or substance. LSA-C.C.P. art. 2001 et seq.*.; Cheramie v. Vegas*, 468 So.2d at 813. For example, under LSA-C.C.P. art.2002, a final judgment may be annulled if it is rendered against an incompetent person not properly served with process, against a defendant not served with process and who has not entered a general appearance, or by a court which does not have subject matter jurisdiction of the litigation. *Cheramie v. Vegas*, 468 So.2d at 813; *Sharp v. Brown*, 464 So.2d 12, 14 (La.App. 1st Cir.1984), *writ denied*, 467 So.2d 537 (La.1985). Also, a final judgment can be annulled if obtained through fraud or ill practices. LSA-C.C.P. art. 2004; *Homer National Bank v. Nix*, 566 So.2d 1071, 1075 (La.App. 2nd Cir.), *writ denied*, 569 So.2d 985 (La.1990); *Sharp v. Brown*, 464 So.2d at 15. However, absent an attack via one of the well-delineated methods of attacking a final judgment, the judgment maintains the effect of the law between the parties. *See Bonaventure v. Pourciau*, 577 So.2d 742 (La.App. 1st Cir.1991).

*Preston Oil Co. v. Transcon. Gas Pipe Line Corp.*, 594 So.2d 908, 913-14 (La.App.

1 Cir. 1991).

Therefore, in the absence of evidence that the court's order recognizing the marital agreement entered by the parties has been annulled pursuant to an appropriate attack, we find that the trial court erred in granting the motion for involuntary dismissal in this regard.

Retroactivity of the Child Support Order

Linda next asserts that the trial court erred in not making the child support order retroactive to the petition for divorce which John filed in 2005.

Louisiana Revised Statutes 9:315.21 provides, in pertinent part, as follows:

> A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
>
> B. (1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.
>
> (2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown, but in no case prior to the date of judicial demand.
>
> C. Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
>
> D. Child support of any kind, except that paid pursuant to an interim child support allowance award, provided by the judgment debtor from the date of judicial demand to the date the support judgment is signed, to or on behalf of the child for whom support is ordered, shall be credited to the judgment debtor against the amount of the judgment.
>
> E. In the event that the court finds good cause for not making the award retroactive to the date of judicial demand, the court may fix the date on which the award shall commence, but in no case shall this date be a date prior to the date of judicial demand.

Although John's petition for divorce contained a prayer that the court set the child support obligation, no motion to set child support was made until Linda filed

a motion to have it set in May 2009. The trial court found that the original demand was abandoned. Linda argues that John made a judicial admission in a Lafayette Parish proceeding for child support that the issue of child support was pending in St. Landry Parish.

After reviewing the record and the court's extensive written reasons for judgment, we find that the trial court had good cause for failing to make the award retroactive. The trial court notes the extensive delays in asking for determination of the child support obligation and the fact that the parties amicably determined the amount and payment of child support until their older child turned eighteen, graduated from high school, and left Linda's residence, and John cut the amount of his voluntary payments.

> The trial court is vested with much discretion in fixing awards of child support. The court's reasonable determinations shall not be disturbed unless there is a clear abuse of discretion. *State, Department of Social Services ex rel. C.J.V. v. Neathery, supra*; *Curtis v. Curtis, supra*; *Cory v. Cory*, 34,053 (La.App. 2d Cir.11/1/00), 771 So.2d 225.

*Harrington v. Harrington*, 43,373 (La.App. 2 Cir. 8/13/08), 989 So.2d 838, 844. Finding no abuse of discretion, we will not disturb the trial court's determination in this regard.

Amount of Child Support

Finally, Linda argues that the trial court erred in failing to award child support consistent with the lifestyle the minor child enjoyed prior to the divorce. Linda cites *Falterman v. Falterman*, 97-192 (La.App. 3 Cir. 10/8/97), 702 So.2d 781, in support of her argument. The court in that case stated that:

> La.R.S. 9:315.10(B) provides that, where the parties' monthly combined adjusted gross income exceeds $10,000.00, "the court shall use its discretion in setting the amount of the basic child support obligation, but in no event shall it be less than the highest amount set

forth in the schedule." And, attached to this statutorily guaranteed discretion, the trial court's judgment in such matters will not be disturbed in the absence of a showing of an abuse of discretion. *Krampe v. Krampe*, 625 So.2d 383 (La.App. 3 Cir.1993), *writ denied*, 93-2763 (La.1/7/94); 630 So.2d 781. Furthermore, when setting the amount of child support to be paid by a parent, the court strives to maintain the lifestyle of the child, when possible, while considering the child's reasonably proven expenses and the parent's ability to provide. *See Montet v. Montet*, 629 So.2d 538 (La.App. 3 Cir.1993); *Krampe*, 625 So.2d 383 (Domengeaux, C.J., concurring); *Hargett v. Hargett*, 544 So.2d 705 (La.App. 3 Cir.), *writ denied*, 548 So.2d 1235 (La.1989).

The jurisprudence in our state consistently has recognized that there is "no universal mathematical formula" for calculating the amount of child support to be paid where the parties' combined adjusted income exceeds the child support guidelines contained in La.R.S. 9:315.14. *Serrate v. Serrate*, 96-1545, p. 7 (La.App. 1 Cir. 12/20/96); 684 So.2d 1128, 1133. However, this court has held that simple extrapolation of the guidelines, without considering the child's needs, is not an acceptable method. *Preis v. Preis*, 93-569 (La.App. 3 Cir. 2/2/94); 631 So.2d 1349 (rejecting *Aguilar v. Wilson*, 613 So.2d 228 (La.App. 1 Cir.1992), *writ denied*, 614 So.2d 66 (La.1993)). In *Preis*, this court stated:

> The support for a child or children of a more affluent lifestyle, as in this case, is a concern for the courts to address on a case by case method. We find by simply extrapolating from the guidelines without concern and discretion by the court in balancing the needs and lifestyle of the child or children, could lead to excessive child support awards.

*Id.* at p. 12; 631 So.2d at 1356. A trial court must consider the totality of circumstances present in each case and formulate an award of child support accordingly. *Rosenbloom v. Rosenbloom*, 94-1762 (La.App. 4 Cir. 4/26/95); 654 So.2d 877, *writ denied*, 95-1320 (La.9/1/95); 658 So.2d 1266. While this court has recognized that some evidentiary proof of the children's needs is necessary, a trial court is not limited to an award of that amount. *See Hector v. Raymond*, 96-972 (La.App. 3 Cir. 4/2/97); 692 So.2d 1284, *writ denied*, 97-1134 (La.6/13/97); 695 So.2d 978; *Preis*, 93-569; 631 So.2d 1349.

*Id.* at 783.

After reviewing the trial court's extensive consideration of this issue, we find no abuse of discretion in his award of child support. It was uncontested that John's monthly adjusted gross income alone is well beyond $10,000.00. The court

thoroughly considered the needs of the child as well as the lifestyle to which she was accustomed. He took into account the expenses involved in maintaining that lifestyle, the activities she was accustomed to pursuing, and the ability of her parents to provide. The trial court considered the totality of the circumstances and set his award on that basis. Accordingly, we find no error in the award made.

## CONCLUSION

For these reasons, the judgment of the trial court is reversed insofar as it grants the motion for involuntary dismissal as to the trial court order recognizing the establishment of a community regime between the parties. In all other respects the judgment is affirmed.

Costs of this appeal are assessed half to John Haas Weinstein and half to Linda Allen Weinstein.

**AFFIRMED IN PART AND REVERSED IN PART.**

NUMBER 10-1083

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JOHN HAAS WEINSTEIN

VERSUS

LINDA ALLEN WEINSTEIN

CONSOLIDATED WITH

NUMBER 10-1084

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JOHN HAAS WEINSTEIN

VERSUS

LINDA ALLEN WEINSTEIN

AMY, J., concurring in part, dissenting in part.

I respectfully dissent from that portion of the majority opinion reversing the trial court's determination that the August 7, 1997 order purportedly establishing a community property regime was invalid. It is clear that the parties failed to satisfy the requirements necessary to create a matrimonial agreement pursuant to La.Civ.Code art. 2331. In my opinion, the deficient attempt to create a community property regime was a nullity. Therefore, I would affirm the trial court's decision in this regard.

In all other aspects of the opinion, I concur in the majority's decision.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

10-1083 consolidated with 10-1084

JOHN HAAS WEINSTEIN

VERSUS

LINDA ALLEN WEINSTEIN

**GENOVESE, J., dissents in part and assigns the following reasons.**

The trial court found that the August 7, 1997 order establishing a community property regime between John and Linda Weinstein was invalid and granted John's motion for involuntary dismissal. On appeal, the majority reverses the trial court's grant of John's motion for involuntary dismissal, finding "a bilateral contract embodying the mutual consent of the parties" thereby resulting in a "consent judgment." I disagree.

Louisiana Civil Code Article 2331 states as follows: "A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses." It is unrefuted that this statute (with its mandatory language) was not complied with. The alleged matrimonial agreement is invalid because it was only signed by one witness in contravention of La.Civ.Code art. 2331. There is nothing in the record evidencing a "consent judgment." Any suggested "bilateral contract" is without merit because the legal requirements of the statute were not met.

Compliance with La.Civ.Code art. 2331 is mandatory and cannot be assumed. The trial court correctly granted the dismissal of Linda's claim of a community property regime, finding that an attempted re-establishment of the community property regime was legally invalid as "it didn't follow the formalities of law." I fully

agree with the trial court.  To decide otherwise is to neuter La.Civ.Code art. 2331 and to render its requirements meaningless.  I would affirm the trial court's judgment in its entirety.