702 So.2d 781 (1997)
James Bonin FALTERMAN, Jr., Plaintiff-Appellant,
v.
Leesa Ann Billodeau FALTERMAN, Defendant-Appellee.
No. 97-192.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1997.
Rehearing Denied December 8, 1997.
James Nathan Prather, Jr., Lafayette, for James Bonin Falterman, Jr., et al.
Michael W. Campbell, Lafayette, for Leesa Ann B. Falterman.
*782 Before DOUCET, C.J., and DECUIR and AMY, JJ.
AMY, Judge.
Both the plaintiff, James Falterman, Jr., and the defendant, Leesa Billodeau Falterman, appeal from the district court's judgment establishing James' monthly child support obligation. For the following reasons, we affirm.

DISCUSSION OF THE RECORD
Leesa and James were married June 18, 1982. During their marriage four children were born, James, III, Kathryn, Nicholas, and Corrine. On September 9, 1993, James, having left the matrimonial domicile on or about February 8, 1993, filed for a divorce under La.Civ.Code art. 103. A final divorce was granted September 17, 1993.
On June 13, 1995, James filed a "Rule for Custody and Child Support" and, on August 2, 1995, Leesa filed a "Rule to Judicially Set Child Support." A hearing on both rules was scheduled for August 21, 1995. However, without reaching the merits of the individual rules, the parties entered into the record a non-prejudicial stipulation establishing child custody and support until a full hearing could be held. This stipulation provided that: (1) the parties would have joint custody of the children wherein the domiciliary parent would be the parent with physical custody at that time; (2) James was to have physical custody of the children, every Friday afternoon through Sunday morning during the school year, every Sunday to Friday during the summer months and two weeks uninterrupted during the summer; (3) Leesa and James would alternate major holidays and each child's birthday; and, (4) "until a hearing for the support comes up or ... it [is] resolved by the Court ..., [James] will continue to pay the current support ..." amount of $4,200.00 per month.[1]
On December 21, 1995, Leesa moved to have her rule to judicially fix child support "dismissed with full prejudice." Subsequent thereto, James adjusted the amount of child support he paid directly to Leesa to an average payment of $1,000.00 per month for the period from January 1996 through June 1996. However, the trial court, finding that the non-prejudicial stipulation as to support payments "survived the dismissal of the rule[,]" ordered James to continue paying $4,200.00 per month, the amount stipulated to by the parties, with credit given for expenses paid by him. This amount was to be paid by James until a judicial determination could be made concerning the appropriate amount of his child support obligation.
Accordingly, on May 21, 1996, James filed a motion to refix his rule to fix child support originally filed on June 13, 1995. A hearing was held to determine James' child support obligation on July 17, 1996. The trial court found the children's monthly expenses to be $6,379.00 per month and ordered James, who earns ninety-five percent of their combined adjusted gross income of approximately $33,500.00 per month, to pay $4,430.00 per month directly to Leesa, as well as paying for all necessary tutoring to the appropriate payee and $179.00 for medical insurance.
James appeals from that judgment and asserts that the trial court erred in: (1) awarding an amount without basis in the evidence or without stating reasons for awarding said amount; (2) granting and subsequently amending an award of child support that is excessive based on the evidence presented; (3) failing to grant him, a co-domiciliary parent who has custody of the children 40% of the time, a credit for the period of time the children are in his care; and, (4) failing to make the child support award retroactive to the date of filing this action by James. Leesa also appeals, alleging that the child support obligation set by the trial court was abusively low.

LAW

CHILD SUPPORT OBLIGATION
In his first two assignments of error, James contends that the amount of child *783 support awarded by the trial court was excessive because it was not supported by the evidence and no reasons were given for an award above that proven to be necessary by the documentary evidence. Leesa also appeals from the trial court's award of child support; however, she contends that the trial court's award is abusively low.
La.R.S. 9:315.10(B) provides that, where the parties' monthly combined adjusted gross income exceeds $10,000.00, "the court shall use its discretion in setting the amount of the basic child support obligation, but in no event shall it be less than the highest amount set forth in the schedule." And, attached to this statutorily guaranteed discretion, the trial court's judgment in such matters will not be disturbed in the absence of a showing of an abuse of discretion. Krampe v. Krampe, 625 So.2d 383 (La.App. 3 Cir.1993), writ denied, 93-2763 (La.1/7/94); 630 So.2d 781. Furthermore, when setting the amount of child support to be paid by a parent, the court strives to maintain the lifestyle of the child, when possible, while considering the child's reasonably proven expenses and the parent's ability to provide. See Montet v. Montet, 629 So.2d 538 (La. App. 3 Cir.1993); Krampe, 625 So.2d 383 (Domengeaux, C.J., concurring); Hargett v. Hargett, 544 So.2d 705 (La.App. 3 Cir.), writ denied, 548 So.2d 1235 (La.1989).
The jurisprudence in our state consistently has recognized that there is "no universal mathematical formula" for calculating the amount of child support to be paid where the parties' combined adjusted income exceeds the child support guidelines contained in La.R.S. 9:315.14. Serrate v. Serrate, 96-1545, p. 7 (La.App. 1 Cir. 12/20/96); 684 So.2d 1128, 1133. However, this court has held that simple extrapolation of the guidelines, without considering the child's needs, is not an acceptable method. Preis v. Preis, 93-569 (La.App. 3 Cir. 2/2/94); 631 So.2d 1349 (rejecting Aguilar v. Wilson, 613 So.2d 228 (La.App. 1 Cir.1992), writ denied, 614 So.2d 66 (La.1993)). In Preis, this court stated:
The support for a child or children of a more affluent lifestyle, as in this case, is a concern for the courts to address on a case by case method. We find by simply extrapolating from the guidelines without concern and discretion by the court in balancing the needs and lifestyle of the child or children, could lead to excessive child support awards.
Id. at p. 12; 631 So.2d at 1356. A trial court must consider the totality of circumstances present in each case and formulate an award of child support accordingly. Rosenbloom v. Rosenbloom, 94-1762 (La.App. 4 Cir. 4/26/95); 654 So.2d 877, writ denied, 95-1320 (La.9/1/95); 658 So.2d 1266. While this court has recognized that some evidentiary proof of the children's needs is necessary, a trial court is not limited to an award of that amount. See Hector v. Raymond, 96-972 (La.App. 3 Cir. 4/2/97); 692 So.2d 1284, writ denied, 97-1134 (La.6/13/97); 695 So.2d 978; Preis, 93-569; 631 So.2d 1349. In Hector, this court affirmed a child support award where the mother did not present evidence of her child's needs in the amount of the support award. Hector, 96-972; 692 So.2d 1284. In support of that disposition, we stated:
[H]er support requirements were based on a situation which did not take into consideration the standard of living that Cody would be entitled to were he to reside with his father. See Hargett, 544 So.2d 705. We do not find that Cody should be denied the opportunity of a certain lifestyle that would be available to a minor child born to a legal union. We find that an award of $6,000.00 per month is just, legal, and proper based on our review of the record in these proceedings. La.Code Civ.P. art. 2164.
Id. at p. 7; 692 So.2d at 1288.
In the present case, the trial judge determined that the children's reasonable monthly expenses equal $6,379.00. James contends that this amount is excessive because the documentary evidence presented by Leesa illustrates that the expenses of the entire household on average equals $2,724.63 per month, excluding the house note paid directly by him. James further contends that included in this amount are several one time expenses. While it is true that Leesa's canceled checks for the period from August *784 1994 through July 1995 and mid-December 1995 through May 1996, which were presented at trial, alone do not support a finding of monthly expenses in excess of $6,000.00, the trial judge was required to also consider the lifestyle the children would enjoy if in the care of their father, and James' ability to support them. Additionally, Leesa's mother, Josephine Billodeau, testified regarding assistance she and her husband provided to Leesa and the children due to the lack of available funds. Josephine testified that, over a nine month period, she has given Leesa cash gifts totaling $2,056.90 (average of $228.54 per month), cooked 114 meals for the children (estimated at $2.00 per meal/per meal equaling $912.00 or $101.33 per month), groceries and household items totaling $3,147.94 (average of $349.77 per month), $2,425.00 in court costs for Leesa (average of $269.44 per month), and transported the children to and from school, tutoring and other activities while Leesa was working for a total of 5,682 miles (valued at $.18 per mile equaling $1,136.40 or $126.25 per month). Although the trial judge did not categorize how he arrived at the amount of the children's monthly expenses, we consider the values given by Josephine. The above mentioned gifts support that Leesa's parents donated approximately $1,075.34 during the nine-month period from August 1995 through May 1996, but these figures are admittedly not included in James' calculations.
In finding the children's reasonable expenses to be $6,379.00 per month, the lower court rendered James responsible for $6,060.05 (95% of the children's monthly expense). James was ordered to pay $4,430.00 per month directly to Leesa, $179.00 for medical insurance paid directly to the insurer, and all necessary tutoring expenses. The trial judge used the figure of $1,500.00 per month for the tutoring. However, we note that this figure fluctuates from month to month with $1,500.00 being on the high end. By adding these figures, it appears that the most James will be responsible for is $6,109.00 per month. We do not consider this award to be abusively high or low.

CONSIDERATION OF TIME SPENT WITH THE CO-DOMICILIARY PARENT
We next consider James' argument that the trial court erred in failing to consider the time he spends with his children as a basis for decreasing his child support payments.
La.R.S. 9:315.8, which provides for the calculation of child support, states in part:
(E) In cases of joint custody the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time. The court shall include in such consideration the continuing expenses of the domiciliary party.
In Green v. Green, 95-307, p. 6 (La. App. 3 Cir. 10/4/95); 663 So.2d 277, 280, we concluded:
The above statute [La.R.S. 9:315.8(E) ] mandates that the court is required to consider the period of time spent with the nondomiciliary party as a basis for adjustment of the child support obligation. It also, importantly, requires the court to make this consideration in light of the domiciliary party's continuing expenses. The statute does not mandate an adjustment for time spent, nor does it remove from the trial court the discretion to decide whether to make an adjustment. Temple v. Temple, 94-1244 (La.App. 3 Cir. 3/1/95); 651 So.2d 466.
Furthermore, "[t]here is no hard and fast rule to determine just how much[, if any,] to reduce the child support obligation based on the percentage of time the children live with either parent." In re Burkenstock, 95-586, p. 4 (La.App. 5 Cir. 12/13/95); 666 So.2d 1168, 1170. In determining whether to make an adjustment in the amount of child support owed by a co-domiciliary parent for time spent with his children, the trial court is granted wide discretion. Temple, 94-1244; 651 So.2d 466. Therefore, this court will not disturb the trial court's determination absent an abuse of discretion.
The record indicates that the children spend approximately 40% of the time with James and 60% of the time with Leesa. While it is true that the custody implementation *785 plan provides for James to have the children 60% of the time during the summer months, it is equally true that, in accordance with the plan, the longest period of time either parent is to have the children is for an uninterrupted two-week visit during the summer months. Accordingly, the children's ongoing expenses provided by Leesa are unaffected during the time that the children are with James. The courts have consistently refused to grant a reduction where the expenses of a domiciliary parent remain constant. See, e.g., In re Burkenstock, 95-586; 666 So.2d 1168; Corley v. Corley, 600 So.2d 908 (La.App. 4 Cir.1992).
After a review of the record, we conclude that the trial court did not abuse its wide discretion in its denial of James' request for a reduction in his child support obligation for the time the children spend with him. Therefore, we conclude that this assignment of error is without merit.

EFFECTIVE DATE OF CHILD SUPPORT AWARD
In his final assignment of error, James contends that the trial court erred in failing to make the child support award retroactive to the date of filing the child support rule. As did the others, this assignment lacks merit.
La.R.S. 9:315.21 provides in pertinent part:
B. (1) A judgment that initially awards or denied final child support is effective as of the date the judgment is signed and terminates an interim child support allowance of that date.
The non-prejudicial stipulation whereby James agreed to pay child support in the amount of $4,200.00 per month to Leesa was an interim child support allowance. As such, the trial judge was absolutely correct in making the judgment awarding child support effective from the date the judgment was signed. Therefore, James' last assignment of error, alleging that the child support award should have been made retroactive to the date his rule was filed, lacks merit.

DECREE
For the foregoing reasons, the trial court's judgment is affirmed. The costs of this appeal are to be shared equally between the parties.
AFFIRMED.
DECUIR, J., dissents and assigns reasons.
DECUIR, Judge, dissenting.
I respectfully dissent. It is undisputed that Dr. Falterman has physical custody of the children forty percent of the time. In my view the trial court erred in failing to grant a reduction in child support for the time the children are in the custody of their father. The majority notes that the courts have consistently refused to grant a reduction where the expenses of a domiciliary parent remain constant. In this case, however, those expenses do not remain constant.
In view of Dr. Falterman's income, the trial court properly fixed child support at an amount higher than necessary to provide for the basic expenses of the children. However, it follows that when the children are not with Mrs. Falterman she does not bear the burden of providing them the affluent lifestyle to which their father's income entitles them. Furthermore, at the time of judgment, Dr. Falterman was paying the house note on the family home directly. Therefore, what is no doubt the most onerous of constant household expenses is already being paid by Dr. Falterman. Under these circumstances, it cannot be said that Mrs. Falterman's expenses for the children remained constant. Accordingly, I would find that the trial court erred in failing to grant Dr. Falterman a reduction in child support for the forty percent of the time which the children are in his physical custody.
For these reasons, I respectfully dissent and would grant Dr. Falterman a reduction in child support payments to reflect the forty percent of the time he has physical custody of the children.
NOTES
[1] On March 26, 1996, during a hearing on a rule filed by Leesa to enforce child support, the record reveals that the $4,200.00 figure was reached after James, Leesa, James' Certified Public Accountant (CPA), and Leesa's CPA met and "went over one hundred percent (100%) of all expenses, anything conceivable, and they came up with a figure to maintain the status quo...."