NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-582


SAMUEL HENDERSON SHUFFLER

VERSUS

SARAH CARLTON SHUFFLER


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2007-1224
HONORABLE DAVID BLANCHET, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.


AFFIRMED.


Diane Sorola
Attorney at Law
402 West Convent Street
Lafayette, Louisiana 70501
(337) 234-2355
Counsel for Defendant/Appellant:
    Sarah Carlton Shuffler (Gedney)

**Philip C. Kobetz**
**Attorney at Law**
**Post Office Box 80275**
**Lafayette, Louisiana  70598**
**(337) 291-1990**
**Counsel for Plaintiff/Appellee:**
**Samuel Henderson Shuffler**

**KEATY, Judge.**

Sarah Carlton Gedney (Ms. Gedney), formerly Sarah Shuffler, appeals a child support judgment rendered by the trial court. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Samuel Henderson Shuffler (Dr. Shuffler) and Ms. Gedney are the parents of three minor children. Mason was born on January 15, 1999; Henry was born on July 17, 2001; and Maggie was born on April 15, 2003. This action for divorce was commenced on March 9, 2007, and the parties were divorced on April 17, 2008. They divided their community property in June of 2009. As part of that partition agreement, Ms. Gedney retained the parties' family home subject to its mortgage. She also received a contractual alimony payment that would terminate after five years.

During the pendency of the divorce suit, Ms. Gedney filed a request for child support. A hearing officer conference was held on October 30, 2007, at which time Dr. Shuffler was ordered to pay child support to Ms. Gedney in the amount of $7,000.00 per month, and to pay eighty-five percent of the children's private school tuition. Ms. Gedney was required to pay fifteen percent of the minor children's private school tuition. Dr. Shuffler was not obliged to pay for any of the children's extracurricular activity expenses.

The hearing officer recommendation of October 30, 2007, remained in force and effect as a temporary order of the court for a period of over five years. The matter finally came before the trial court on December 10, 2012, for a determination of the appropriate amount of child support payable by Dr. Shuffler to Ms. Gedney.

The parties entered into stipulations at the commencement of the trial. They stipulated that the contractual alimony being paid by Dr. Shuffler to Ms. Gedney, which was to terminate prior to June 2013, would not be considered as income to Ms. Gedney for the purposes of the court's calculation of child support. The parties further stipulated that the future termination of Ms. Gedney's contractual alimony would not, in and of itself, be considered a change in circumstances to modify child support. The parties also stipulated that, although the issue of child support had been pending before the trial court since May 16, 2007, the trial court's determination of child support would be made retroactive to a date no earlier than January 1, 2011.

At the conclusion of the hearing, the trial court gave oral reasons for ruling and awarded child support to Ms. Gedney. The trial court broke down its award into two periods. The first (Period 1), for the period from January 1, 2011[1] through January 31, 2012, reflected child support payable during a period where one of the parties' minor children was hospitalized in Houston for cancer treatment. The second period (Period 2) commenced on January 31, 2012, and continues until further modification by the court.

The trial court ordered Dr. Shuffler to pay child support during Period 1 in the amount of $7,025.00 per month, plus one hundred percent of the children's private school tuition expense,[2] one hundred percent of the children's

---

[1] January 1, 2011 was the earliest date of the trial court's review as per the parties' stipulation.

[2] The children's private school tuition expense averaged $44,209.41 per year or $3,684.12 per month.

extracurricular activity and camp expenses,[3] and one hundred percent of the children's health insurance.[4] The trial court ordered Dr. Shuffler to pay child support during Period 2 in the amount of $6,690.00 per month, plus one hundred percent of the children's private school tuition expense, plus one hundred percent of the children's extracurricular activity and camp expenses, plus one hundred percent of their health insurance costs.

The net result of the trial court's decision is that Dr. Shuffler now pays child support monthly as follows:

(1) Direct payment to Ms. Gedney:  $6,690.00
(2) One hundred percent of children's tuition:  $3,684.12
(3) One hundred percent of children's extracurricular activities and summer camps:  $1,672.83
(4) One hundred percent of children's health insurance:  $488.62

Total Monthly Child Support:  $12,535.57

Ms. Gedney is now before this court asserting that:  (1) the trial court erred in calculating Dr. Shuffler's income for child support purposes and (2) the trial court erred in calculating the child support award.

## DISCUSSION

### I.  Calculation of Income

At the outset, there seems to be misinterpretation as to Ms. Gedney's first assignment of error.  As mentioned above, Ms. Gedney contends in her first assignment of error that the trial court erred in calculating Dr. Shuffler's income for child support purposes.  Dr. Shuffler contends that Ms. Gedney argues that the trial court erred in its determination of her income rather than his.  In support of

---

[3] The children's extracurricular activity and camp expenses averaged $20,073.95 per year or $1,672.83 per month.

[4] The children's health insurance averaged $5,863.44 per year or $488.62 per month.

3

Ms.Gedney's first assignment of error, however, she addresses the trial court's calculation of both Dr. Shuffler's and her income. As such, this court will address whether the trial court erred in calculating both Dr. Shuffler's and Ms. Gedney's income for child support purposes.

## A. Dr. Shuffler's Income

Ms. Gedney contends that Dr. Shuffler's tax returns indicated that his income was $1.1 million dollars for 2011. Ms. Gedney alleges that Dr. Shuffler's certified public accountant (CPA), Jeanne Billeaud (Ms. Billeaud), testified that his annual income was $868,000.00. The trial court, however, determined Dr. Shuffler's income to be $779,868.00. Ms. Gedney contends that the trial court erred in calculating Dr. Shuffler's yearly income for purposes of calculating his gross monthly income.

In opposition, Dr. Shuffler does not directly address Ms. Gedney's allegation that the trial court erred in its calculation of his income. Instead, Dr. Shuffler argues that he should not be ordered to pay more child support merely because of the fact that his income is high. Dr. Shuffler fears that increasing the child support award would make his children feel entitled. Dr. Shuffler argued that he does not want his children living the lifestyle of the rich and famous. Rather, Dr. Shuffler argued that he wants his children to be normal, good children.

The determination of the amount of Dr. Shuffler's "gross monthly income is a finding of fact subject to manifest error review, and one which cannot be set aside by a reviewing court unless it is clearly wrong or manifestly erroneous." *Piccione v. Piccione*, 01-1086, p. 5 (La.App. 3 Cir. 5/22/02), 824 So.2d 427, 430.

The trial court made a finding of fact that Dr. Shuffler's gross income was $779,868.00 annually or $64,989.00 per month. Extensive testimony was heard by

the trial court from Dr. Shuffler's expert witness, Ms. Billeaud, who gave a detailed overview of Dr. Shuffler's finances. The trial court accepted the testimony of Dr. Shuffler's expert as being accurate as to his gross monthly income of $64,989.00. We note that Ms. Billeaud's testimony indicates she arrived at a gross monthly figure of $64,989.00 by dividing $868,000.00 by twelve. Such a calculation, however, renders a gross monthly income of $72,333.00 rather than $64,989.00 for a difference of $7,344.00 per month. Nevertheless, Dr. Shuffler's schedule of taxable income in excess of cash flow for the years 2009 to 2011, which was entered into the record, indicates that $779,867.65, i.e., $779,868.00, represents Dr. Shuffler's adjusted gross annual income less phantom income. The trial court appears to have arrived at $64,989.00 by dividing $779,868.00 by twelve. Thus, the trial court's calculation of $64,989.00 per month is clearly supported by the record. Since the trial court's finding is supported by the record, we find no manifest error.

## B. Ms. Gedney's Income

The trial court found that for the year 2011, Ms. Gedney was unable to work due to Henry's illness. The trial court found that by February 1, 2012, Ms. Gedney was fully employable and that she should have been working. As of the date of the hearing, the trial court found Ms. Gedney was voluntarily unemployed.

Louisiana Revised Statutes 9:315.11(A) provides:

> If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. In determining the party's income earning potential, the court may consider the most recently published Louisiana Occupational Employment Wage Survey.

Dr. Shuffler introduced into evidence the Louisiana Occupational Employment and Wage Survey for the Lafayette Regional Labor Market Area as authorized by La.R.S. 9:315.11(A). That wage and earnings survey indicated that the mean/average income for "Educational, Vocational, and School Counselors" in the Lafayette Regional Labor Market was $53,710.00 per year, or $4,475.83 per month.

Ms. Gedney devotes little argument in her appeal brief to this issue. Ms. Gedney introduced little evidence of her earning potential at trial, stating that prior to her son's illness, she had been discussing going to work at her children's school for a starting salary of approximately $3,000.00 per month. She suggests that when she worked fourteen years ago, she never earned over $35,000.00 per year. Because Ms. Gedney is voluntarily unemployed, however, the trial court resorted to the use of current wage surveys and found that Ms. Gedney had an earning potential of $4,000.00 per month. Notably, the trial court's imputed income is less than the mean/average income for her profession according to the wage surveys. Accordingly, we find that the trial court did not commit manifest error in determining that Ms. Gedney's earning potential was $4,000.00 per month.

**II.    Calculation of Child Support**

Having determined that the trial court committed no error in the determination of Dr. Shuffler's and Ms. Gedney's gross income, we must consider whether the trial court abused its discretion in setting the amount of child support. Ms. Gedney contends that the trial court erred in calculating the child support award. She alleges that their children are entitled to the same standard of living as if they resided with their father who has a monthly income of greater than $64,000.00. Ms. Gedney contends that a limited monthly amount of child support

6

equaling $7,000.00 initially and ultimately $6,690.00 does not give her the ability to raise her children in the same lifestyle they would have enjoyed residing with their father.

Dr. Shuffler opposes and alleges that the trial court did not err in determining the amount of child support payable to Ms. Gedney. Dr. Shuffler contends that Ms. Gedney introduced no evidence to support her argument that the children live a lesser or lower standard of living while in her care than they do while with their father. Dr. Shuffler testified that the children actually live very comparable lifestyles with each of the parents, though at times, Ms. Gedney actually lives a better lifestyle than he does.

In the case at bar, the trial court found that the combined gross income of Dr. Shuffler and the imputed gross income of Ms. Gedney exceeded the highest level specified in the schedule of support codified at La.R.S. 9:315.19. In such cases, La.R.S. 9:315.13(B)(1) provides that the court:

> Shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the schedule.

In the recent case of *Allie v. Allie*, 11-292, 11-293, pp. 4-5 (La.App. 3 Cir 11/30/11), 80 So.3d 644, 647-48, this court addressed the issue of child support when the combined gross incomes of the parties exceed the child support schedules.

> This court in *Falterman v. Falterman*, 97-192 (La.App. 3 Cir. 10/8/97), 702 So.2d 781, 783, *writ not considered*, 98-0076 (La.03/13/98), 712 So.2d 863, addressed deviation from the child support guidelines in the instance of income exceeding the Louisiana Child Support Guidelines as follows:
>
> > La.R.S. 9:315.10(B) provides that, where the parties' monthly combined adjusted gross income exceeds $10,000.00, "the court shall use its discretion in

setting the amount of the basic child support obligation, but in no event shall it be less than the highest amount set forth in the schedule." And, attached to this statutorily guaranteed discretion, the trial court's judgment in such matters will not be disturbed in the absence of a showing of an abuse of discretion. *Krampe v. Krampe*, 625 So.2d 383 (La.App. 3 Cir.1993), *writ denied*, 93-2763 (La. l/7/94); 630 So.2d 781. Furthermore, when setting the amount of child support to be paid by a parent, the court strives to maintain the lifestyle of the child, when possible, while considering the child's reasonably proven expenses and the parent's ability to provide. See *Monet v. Monet*, 629 So.2d 538 (La. App. 3 Cir.1993); *Krampe*, 625 So.2d 383 (Domengeaux, C.J., concurring); *Hargett v. Hargett*, 544 So.2d 705 (La. App. 3 Cir.), *writ denied*, 548 So.2d 1235 (La.1989).

. . . .

. . . A trial court must consider the totality of circumstances present in each case and formulate an award of child support accordingly. *Rosenbloom v. Rosenbloom*, 94-1762 (La.App. 4 Cir. 4/26/95); 654 So.2d 877, *writ denied*, 95-1320 (La.9/1/95); 658 So.2d 1266. While this court has recognized that some evidentiary proof of the children's needs is necessary, a trial court is not limited to an award of that amount. See *Hector v. Raymond*, 96-972 (La.App. 3 Cir. 4/2/97); 692 So.2d 1284, *writ denied*, 97-1134 (La.6/13/97); 695 So.2d 978; *Preis*, 93-569; 631 So.2d 1349.

After hearing all of the evidence, the trial court made several specific factual findings in its oral reasons and written Reasons for Ruling, all of which were supported by the evidence at trial. The trial court found that as of February 1, 2012, Ms. Gedney's gross income earning potential was $48,000.00 per year or $4,000.00 per month. The trial court found that Dr. Shuffler's gross income was $779,868.00 per year or $64,989.00 per month. The trial court noted that by agreement of the parties the children attended private schools. Dr. Shuffler was paying the children's private school expenses directly to the schools in the total amount of $44,209.41 per year, or $3,684.12 per month. The trial court found that Dr. Shuffler paid for the children's extracurricular expenses in the total amount of

$20,073.95 per year or $1,672.83 per month. Those extracurricular expenses included camps for the children, sporting activities, the purchase of a piano, and travel and hotel expenses associated therewith. The trial court found that Dr. Shuffler paid the children's health insurance in the amount of $5,861.04 per year or $488.42 per month.

Although Ms. Gedney, as the mover in the child support rule, has the burden of proof, the trial court found that she presented little evidence as to the lifestyle that the children enjoyed at the home of Dr. Shuffler. *See Moncus v. Moncus*, 510 So.2d 1271 (La.App. 3 Cir. 1987). The trial court found that Ms. Gedney had never been in Dr. Shuffler's home while her residence was the former family home during their marriage. The trial court noted, on the other hand, that Dr. Shuffler testified that the homes were comparable and in the same neighborhood, although his home did not have remodeled bathrooms and a swimming pool like Ms. Gedney's home. The trial court also noted that the parties drove similar sport utility vehicles, Dr. Shuffler's being a GMC Denali and Ms. Gedney's being a Cadillac Escalade. The trial court indicated that Ms. Gedney did, however, introduce evidence to indicate that Dr. Shuffler took the children on family vacations out of state and had a camp at Cypremort Point for the children's enjoyment. The trial court noted that Ms. Gedney proved that Dr. Shuffler had a maid at least once per week in his home.

In its written Reasons for Ruling, the trial court found that maid service in Ms. Gedney's home was appropriate. The trial court found that $276.24 per month was the children's share of the maid service in Ms. Gedney's home ($85.00 per week times fifty-two weeks divided by twelve months times seventy-five percent for the children's share) rather than $163.44. The trial court agreed with

9

Dr. Shuffler that home improvements made to the bathroom in Ms. Gedney's home were not a legitimate expense to be included in the child support calculation. Ms. Gedney, according the trial court, had her own funds for this purpose as well as the funds remaining from her parents' $100,000.00 donation to her. The trial court agreed with the inclusion of the cost of new furniture and bedding purchased by Ms. Gedney for the parties' daughter. The trial court also awarded Ms. Gedney $525.00 per month or $6,300.00 per year in order to pay for a vacation for her three children. The trial court found that Ms. Billeaud assessed a larger percentage of the monthly house note to Ms. Gedney than it deemed appropriate. However, the trial court indicated that such a percentage was offset by Ms. Gedney's refinancing of the home, which increased the monthly note by $393.00 and shortened the term from thirty years to fifteen years.

After making the foregoing findings and some other minor adjustments, the trial court ruled that commencing January 1, 2011, Dr. Shuffler's child support obligation to Ms. Gedney was $7,025.00 per month. By February 1, 2012, after their son's illness had subsided and the trial court found that Ms. Gedney was voluntarily unemployed, the trial court decreased the child support obligation to $6,690.00. In addition to paying the children's health insurance, Dr. Shuffler was ordered to pay one hundred percent of the parties' minor children's school expenses and extracurricular activities, including registration fees, uniforms, special shoes, and other special equipment. Dr. Shuffler was also ordered to reimburse Ms. Gedney for the costs incurred driving back and forth from Houston during their son's illness in 2011. He was also ordered to reimburse Ms. Gedney for half of the total costs incurred for the extra tutoring provided to their son.

After reviewing the record as a whole, we find no abuse of discretion. It is clear from the record that the trial court carefully considered not only the reasonable and necessary expenses but also what was necessary to maintain the children's lifestyle at the same level it had been and would have continued to be had the father been living in the home. We find no error in the trial court's determination of child support, and we affirm the trial court's judgment as to the amount of child support awarded.

## DECREE

The child support judgment rendered by the trial court is affirmed. All costs of this appeal are assessed against Sarah Carlton Gedney.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.